Our first case for argument today is 22-1320, One World Technologies v. Chervon Limited. Mr. Penikowski, please proceed. Good morning, Your Honors. Stanley Penikowski for Appellant, One World Technologies. I plan to reserve five minutes for rebuttal. The Board's final written decision should be vacated because of two sets of legal errors that together affect all challenged claims. First, the Board misconstrued One World's arguments relating to the use of an electrical supply contactor, which is simply an electric on-off switch with Figure 10 of the OOT's prior art reference. In doing so, the Board imposed a non-existent legal requirement for showing that the other known prior art techniques for stopping the rotation of the blade in the lawnmower would not be used in order to prove that the use of the relied-upon technique, here the electrical supply contactor, was obvious. But this Court has held, in Mootec, Medi-Chem, and most recently in Intel v. Packed XPP, that a known technique need not be the best option in order to be an obvious variation. Rather, it need only be a suitable option, and it can even be an inferior option. Can you help me understand the nature of your argument both today and in the petition? Correct me if I'm wrong. Figure 1 is the figure that sort of expressly discloses the first control device. Figure 10 is the figure that discloses the second control device. Is that accurate? Correct, Your Honor. Okay, but does, so is it, is it fair to say that Figure 10 does not, on its face, have the first control device? That is the, what is it called, the electric? Supply contactor. Yeah, the electric supply contactor. Yes, that is correct, Your Honor. Okay, so Figure 10 doesn't. So is your argument that Figure 10 inherently discloses the electric supply contact, or is your argument that it's obvious to take the electric supply contract from Figure 1 and put it into Figure 10? Your Honor, our argument today is neither of those. The first argument based on inherency was made below. The second argument about taking the electric supply contractor from Figure 1 and combining with Figure 10 was not made below. Our argument is that it would be an obvious variation of Figure 10 to use an electrical supply contactor as the first control device. Well, I may be wrong, but my recollection of the Board's opinion is the Board said there are at least three different ways that you could effectuate the safety control that is otherwise called for by the first control device. The electric supply contact is one of them. I think they said a brake. I think there were, am I remembering right? Yes. There are three possible ways, and I think what they concluded is that you didn't put forth a reason or a motivation to choose the one that you're mentioning per se and put it in here rather than any of the other options. Does that sound right? Your Honor, not quite. What the Board said is that Figure 10 of UTIs did not necessarily disclose the electric supply contactor because there were those three options for controlling the blade. However, in making that finding, the Board was treating our argument as if it were only an inherency argument, and we see that at Appendix Page 31 in the Board's decision when the Board says, Petitioner contends that a Proceeda would have understood that the embodiment of UTIs as Figure 10 already had a specific type of control device. Then on Appendix Page 32, the Board says, With that understanding, we turn to our analysis of Petitioner's contentions. And what about the Board's opinion at Appendix Page 36, where I realize this is in the context of the regulation, which requires a safety mechanism, but the Board said there that you don't persuasively explain why the regulation requires an electric supply contact. I'm tongue-tied at the moment. An electrical supply contact, as opposed to one of the other two possible components that could achieve the same thing. Correct, Your Honor. And when the Board said that on Page 36, as well as on Page 38 and on Page 33 of its decision, it was making that finding repeatedly based on an incorrectly limited understanding of our argument. It wasn't just an inherency argument. It was an argument that this would be an obvious variation. So for inherency, the Board's finding that there are three possible options, and you haven't shown that the electric supply contact is required. That has bite with respect to inherency, but it does not have bite with respect to obviousness under MUTET, Medi-Chem, and Intel, because there all we need to do is to provide a motivation to combine as a motivation to combine was articulated at Appendix Pages 358 and 359 of the petition, supported by Appendix Pages 957 and 958 of One World's Experts Declaration. And the two motivations to combine were avoiding the danger of a rotating blade when it is not desired, and to save power when not needed. Where the Board most went astray is in not perceiving that this paragraph of the petition, from which I was just quoting, did contain an argument that it would be obvious to use an electrical supply contactor, which again is just a simple switch, with Figure 10 of UTIs. So the Board's opinion in this respect is on Page 39? Yes, Your Honor. On the fifth? Correct, Your Honor. Is your view that they misunderstood your argument, or that they erred by saying you had to show it was necessary to use an on-off motor switch? Your Honor, the Board misunderstood the argument because the Board was correct insofar as it pointed to, in the Board's words at Appendix Page 39, Petitioner's contention that it would have been obvious to add an operation assembly to UTIs' Figure 10. But then the Board misunderstood the argument when it then said, even if we agree with that, such a modification does not necessarily mean that the assembly would use an electrical supply contactor. And we weren't simply arguing inherently that it necessarily means that. We were also arguing obviousness, that it would be an obvious variation. And it is true, as the Board is describing in that sentence, Your Honor, quoted at Begin's Fifth, that this argument was found under the claim limitation for the operation assembly. But it is a necessary part of the argument that One World was making, that when we say Procedo would have found it obvious to include the claimed operation assembly to enable the user to selectively control, activate, and deactivate the motor, and that one motivation for that is to save power. It's necessarily a part of that argument that the operation assembly is controlling an electric switch, which is the electrical supply contact. But what's the evidence of any of that? The problem is, this sounds a lot like attorney argument. Where was your evidence? Because, I read, I'm even looking at your reply right now, and most of your argument was inherency. Most of your argument was Figure 10 actually teaches, necessarily includes the first control device. Yes, Your Honor. So you're saying, but we also, alternatively, made this obviousness argument. But I don't really see it much, to say the least. I see that you sort of made it, but now it's everything to you. And where's the evidence regarding that obviousness argument? Your Honor, the evidence is in the re-declaration. The problem was, that expert declaration is verbatim your petition. Verbatim. It is a cut and paste job. And the Board said, accordingly, it was conclusory, and didn't find it persuasive. How can I find fault with that? Your Honor, the test for whether something is conclusory is not whether the petition and the declaration have the exact same verbiage. It seems appropriate, given one world's obligation to provide evidence, that the petition would present verbatim what was in the declaration. It doesn't mean the declaration is not evidence. When you said the petition would articulate what was in the declaration, are you making an assertion right now? Which I think you can't, because I would assume it's attorney work product. But are you now claiming that your expert wrote his own declaration, and you all just formulated the petition according to what he said, as opposed to the other way around? Because the Board found it conclusory. The Board looked at this in the other direction. It appeared to the Board that the expert just said what you wanted him to say, copying the petition. It doesn't. But you're sort of suggesting today, oh no, we wrote the petition after our expert did all of this. That feels like attorney work product. It feels like maybe you don't want to go into that. It also feels like maybe it's not part of the record. I don't know. I'm a little nervous about this. Yes, Your Honor. And that is not what I'm suggesting. It is not what I'm representing. I have neither the personal knowledge to represent either way, nor the liberty to do so, even if I did have knowledge under the attorney work product doctrine. But if the Board was premising a ruling that this is just conclusory on the Board's assumption that all that happened was that attorney argument from the petition was being put in the expert problem than what we have here, for the Board to make inferences about the attorney expert workflow and then make rulings based on that, I think, Your Honor, that the better standard for whether this statement is conclusory is simply to look at it on its own terms. And does it give a reasoned explanation? And here it does give a reasoned explanation. What page is this? Yes, the re-declaration, which, as Your Honor correctly noted, is verbatim what is in appendix page 358 to 359. And so, yes, those are the same. And here we do have a concise but reasoned explanation that a proceeding would have found it obvious to include the claimed operation assembly to enable the user to selectively control the motor and thus the blade. And we have two reasons that are being given for that. One, if you include that component, then you can avoid the danger of a rotating blade because the power can be cut when you have a problem here. And here the problem you would have is that the handle is in the wrong position and, therefore, can expose the user's body to the rotating blade. And then we have another motivation to make that combination, which is to save power when not needed. And to save power when not needed rationale is another indication... The problem is what this goes to, the danger of the rotating blade and the safe power. He is saying here that this operation is necessary, but he hasn't said this particular form of first control device in the form of the electric supply contractor is what's necessary or obvious. This paragraph doesn't even mention that. It just says the operation. The safety feature is necessary, but that's why the board said there's lots of safety features. There's a brake. There's an electric supply contractor. There's all these different ways to achieve this operation. So your expert is saying in this paragraph that it would be obvious to want to employ this operation, but he isn't saying it has to be or would be obvious to do so in this way. Your Honor, you're correct that the expert does not state that in so many words. There is one more dot to be connected, but the dot is connected here because in talking about controlling the motor and saving power in paragraph 74, that excludes the other two options. No testimony and no evidence of that. Nowhere. That's attorney argument only. Nowhere in this record did you produce evidence to that effect. Correct, Your Honor. This is an explanation by attorneys of the record and why this argument was present here. What I just said is not stated in so many words in the record. So am I missing something? I don't understand the board to be rejecting this because it's conclusory. I read the board as rejecting this on the ground that you haven't explained why you would do the motor cutoff as opposed to one of the other alternatives. Correct, Your Honor. That is my understanding too of why in this particular paragraph, the board did elsewhere make reference to this as conclusory, but in this particular paragraph at appendix page 39, the board was saying that we haven't excluded the blade decoupling and the breaking of the blade, which are non-electric means of stopping the blade. But the board's analysis, again, would be appropriate for refuting an inherency argument. It's not appropriate under this court's precedent for refuting an obviousness argument. And with that, Your Honor, if there are further questions now, I will sit and reserve my remaining time for rebuttal. Okay. Mr. Nicodema, am I saying that right? Yes, Your Honor. Please proceed. Good morning, Your Honors. Police and Court. This is a substantial evidence case. The board found several times that One World never argued that it would be obvious to modify figure 10 embodiment to include the electrical supply contactor of the figure 1 embodiment. And by the time the case got to the final hearing, the argument was indeed inherency. And that's shown... But they have an alternative argument that we're looking at on page 39, which is not inherency. And that alternative... And as I understand your brief, you appear to agree that the board misconceived the argument in saying that they weren't arguing for an on-off switch on the motor. No, we are not saying the board misconceived anything, Your Honor. The argument they made for obviousness, which counsel just mentioned, was on a different claim element. If you... But here, the board seems to say they weren't arguing for an on-off switch and that there are alternative ways of doing this. Do you agree that their petition argued that it was obvious to add a motor on-off switch? I don't agree. Their argument was it would be obvious to add the claimed operation assembly, which is a different claim element than the first control device. If you look at their petitions, the claimed operation assembly, according to OneWorld, is the hold-to-run component 30, the handle. It is not the electrical supply contact. But the claim itself says operation assembly for being operated by a user to control the motor. And if you keep reading, it says to control the first control device. There's an assembly, a first, second, and third control device. They're different. You're saying they didn't argue that it was obvious to add an on-off switch for the motor? That's right. They didn't argue that. And the board said that several times. And if we look at footnote 17 on appendix page 33, that is one of the instances where they said that. If we look at footnote 17, appendix page 33, again, as discussed above, petitioner does not argue that it would have been obvious to modify the embodiment of figure 10 to include an electrical supply contactor. They never argued that. But that's a different argument. That's not the one we're talking about now. We're not arguing any more about figure 10. They've given up on that. They're arguing that this fifth paragraph here, rejecting their obviousness argument, it was obvious to add an electric motor on-off switch, was misconceived by the board. And then when they argued that it was obvious to add the claimed operational assembly, that was an argument that it was obvious to add the motor on-off switch. But somehow you don't see the argument as being that? No, I don't see the argument as that. Because when the board was mentioning the electrical supply contactor, motor brake and brake coupling, I believe it was doing that in the context of their argument for inherency. Because they were saying, you haven't shown that it's necessary and inevitable to choose that one. And they were also, as footnote 17 shows, saying... They say on 358, it would have been obvious to include one to enable the user to selectively control, activate, and deactivate the motor. I mean, it's pretty clear that they're talking about an on-off switch for the motor, isn't it? No, no, sir. Because on 358, it says, to the extent it's determined that the claimed operation assembly is neither taught nor inherent in UTEL's, the procedure would have found it obvious to include one. The claimed operation assembly is not the first control device. It is a separate claim element. All you have to do is read the claims. Okay, suppose we disagree with you on that, and we think that they did argue that it was obvious to add an on-off switch. Did the board then err by failing to consider that? No, because the board did consider that. If you look on page 33, the board considered that? We're talking about page 39. Okay, let's go to 39. It's dealing with figure 10. 39 is dealing with this argument that it's obvious to add an operation assembly. Just to make sure I am on track, even on page 39, though, it's adding the operation assembly to figure 10, right? Correct. Because isn't that what it says? I think it's all... Isn't figure 10 the baseline for everything? Yes, they said... And figure 10 is the handle cutoff, right? I'm sorry? The rotation cutoff, figure 10. Figure 10 does not have the... It has elements... It's the rotational cutoff. Yes. So they're arguing that it would be obvious to add the motor cutoff to figure 10 here. I have to disagree, Your Honor, because look what the board said in the full paragraph beginning with the word fifth. It says, even if we agree with Petitioner that it would have been obvious to add the operation assembly to the embodiment of figure 10, such a modification does not necessarily mean that the assembly would include hole-to-run component 30 controlling an electrical supply contactor. Again, Petitioner does not adequately explain why the operation assembly could not include, for example, hole-to-run component 30 controlling a motor brake or brake that it would necessarily use a motor. Because if we go to... Motor cutoff. If we go to appendix page 3042, the final hearing, where Judge Mayberry was questioning One World's attorneys, 3042, Judge Mayberry says, excuse me, counsel, is Judge Mayberry a couple of questions on that. First, what I believe the argument you're making is that the embodiment of figure 10 implicitly discloses a control-like hole-to-run 30, a switch-like electrical control contactor, and some type of cabling connecting the two, and he goes on, then he says, is that a correct understanding? And counsel says, it is, Your Honor. It is. So, at that point, they're arguing that these things were inherently disclosed. Well... They were arguing that, but they're also arguing pretty clearly that even if the board rejected that, it was obvious to add the motor cutoff switch to figure 10. The motor cutoff switch is not the claimed operation assembly. The claimed operation assembly, according to their petition, is the handle. It's the hole-to-run component 30, and I can show you in the appendix... Page 356. Page 356. But if you're wrong about that, the board should have considered the argument that it was obvious to add a motor on-off switch, and they didn't do that, right? They never made that argument. But if they did make that argument, the board should have considered it, right? Well, they should consider the arguments that they did make, yes, but they never made that. The board said it at least a half a dozen times. And if you look at 356 that Judge Moore cited, it says right here, Util's handle 1 has an operation assembly 30, which may be a handle, lever, etc. So they're saying in the PTAB that the claimed operation assembly is component 30, which is a handle. It's not the electrical supply contactor. So when counsel argues today and in their briefing that we made this obvious in this argument, that it was obvious to add an electrical supply contactor, an on-off switch, whatever you want to call it, they never did, Judge, because the claims are very specific. They say they have an operation assembly, they have a first control device, a second control device, and a third control device. One fact on that page 356, in the sentence right above the one you read, doesn't the petition expressly make it crystal clear that element 1D and 6D, which are one is the operation assembly and the other is the first control device, are separate devices and separate claim limitations? Correct, Your Honor, and we've argued that several times in our brief before this Court. And as I indicated, this is a substantial evidence case. And when they looked at Mr. Reed's declaration, they found a conclusory. They found that he didn't answer many questions. And I think if the Court look at appendix page 35, the Board goes through quite a recitation in the first full paragraph about the failings of Mr. Reed's declaration, giving examples of what he didn't explain. And, of course, they concluded by saying, Mr. Reed's testimony merely parrots the language from the petition. Now, we're not, the Board was not holding One World to some inappropriate obviousness standard. They made the finding. Well, let's be clear about something. The Board used loose language. The Board, I don't love some of the rhetoric in the opinion. I may think it, under a substantial evidence standard, shall be affirmed. But, I mean, the Board did sort of use this notion that they had to disprove other things, which is probably not a particularly good way to phrase it. Well, I think, Your Honor, when you read it in context, because their argument, a lot of their argument, as Your Honor pointed out, was inherency, they phrased, they used that language that way. But then you have to look at it, at everything they say. If you look at footnote 17, they're saying, and One World, you didn't argue that it would have been obvious to modify figure 10 to include the electoral supply contractor. So, both of those reasons, I think, informed the language that you see. And with that, I will rest. Thank you, Your Honor. Mr. Padachowski, I'll restore two minutes of rebuttal time. Thank you, Your Honor. This Court, in Newvasive, said that the PTAB is required to examine the relevant data and articulate a satisfactory explanation for its action. With respect to both issues here, that didn't happen. And One World requests- Could you address the question of whether you argued for a motor cutoff switch? And the Board, at least, seems to arrest its argument entirely on the notion that you never argued for a motor cutoff switch. Did you argue for that? Your Honor, yes. One World did, in the context of the Operation Assembly claim limitation. Because in the Operation Assembly section of the declaration, at paragraph 74, there was a discussion that a proceeding would have found it obvious to include  not simply control the blade, control the motor, and thus the blade. And then the only way, in the context of an electric lawnmower, for that Operation Assembly to control the motor is to use an electric switch, which is an electric supply contactor that is discussed at appendix page 960 in connection with the limitation, a first control device configured to be controlled by the Operation Assembly. Again, Your Honors, One World did not argue, in so many words, that it would have been obvious to add an electrical supply contactor. There is one more dot that needs to be connected. But there's no other way to understand the evidence that's given at pages 957 and 958  and with one of the motivations to do so being to save power when not needed. And then when that is made in conjunction with the disclosure of the electrical supply contactor. Therefore, One World asks this Court to vacate all four IPR decisions. Thank you, Your Honors. I thank both counsel for their argument. This case is taken under submission.